Good morning. Chris Lockwood for the defendant and appellant. Speak right up, please. This is a bit of a change of pace from the last few cases. We're back to interlocutory qualified immunity appeal. And there are two issues. I think it's important to keep the two issues separate as two separate issues. First issue is, was there probable cause to arrest? And second, was the location of the arrest proper? They really are separate questions. Let's go to the second one. Is there the slightest doubt that at the time this event happened, that the law was clear to effect an in-house warrantless arrest? There must be exigent circumstances. No. The response on that one. Your answer is no. So I take it your position is there were exigent circumstances. It didn't qualify your question. The law allowed the arrest under the circumstance without exigent circumstances. Let me explain that part. If the ---- Now, let's get it back to ground zero, see what we can agree upon or not. Wouldn't you agree that at this time the law was clear that ordinarily the in-house arrest requires a warrant? The arrest of an individual suspected of a crime in their own home requires a warrant. If you would just walk into the house for that purpose, yes. So there are cases that say if exigent circumstances are present, for example, hot pursuit, destruction of evidence, danger to the officer from weapons, et cetera, then sometimes warrantless in-house arrests are permitted. Correct. Are there any exigent circumstances present here? I don't think the case talks about it in terms of exigent. I'm going to ask the exigent itself. If you're taking out the pursuit cases, no. There was no hot pursuit. Well, that's a different question. Let's just tick them off. There was not hot pursuit of a freeing felon. At worst, this is a pet scofflaw. Right? Agreed. Okay. There's no evidence of weapons present. Correct? Agreed. No drugs? Agreed. This is someone who had too, too many dogs. Correct. Right? And she had sort of departed the scene when a pet control officer tried to write her a citation. Well, a little more than that, but yes. Yeah. Did she assault the officer? That's a disputed fact, and we're not raising that as an issue on the appeal. Okay. So the officer attempts to write her a citation. She goes into her home. Correct? A little more than that. The officer tried to write the citation. She refused to give information. The officer went to the truck. The plaintiff followed the officer to the truck. So it's not everything happening inside the house at this point. Then goes back inside. Then the officer shows up. I guess my question is, does the refusal to give information sufficient to complete the citation, would that establish exigent circumstances, standing alone? Exigent circumstances, no. Probable cause, yes. Okay. Probable cause, if she had remained outside her home and the pet control officer had called your client and your client had shown up and absorbed the information from the pet control officer, he very probably would have had probable cause to arrest her at that time. Would you agree with that? Yes. The question is, what happens in the house? Okay. And this is one of the cases, the Santana cases. What is it about what occurred before she went in her house that provided the exigent circumstances sufficient that we would say, okay, immunity? Okay. I don't think that's the right standard is the problem. The Santana case and the U.S. v. Veneaton case, both of which are arrests that occurred right about at the doorway cases, neither one relies on exigent circumstances as the basis. They simply say that if the arrest process begins at the doorway Is this a doorway case? Yes. She went to close the door and he grabbed her, right? The arrest began at that point. Why doesn't the whole issue fail, then, that you have disputed issues of fact? If you're relying on the doorway cases, how can we possibly decide as a matter of law that you win when the fact is disputed how this thing got started at the doorway? Well, there's no dispute that it happened within arm's reach of the doorway. Well, that may be. But the circumstances are that her claim is that he put his foot in the door and forced his way in. And you're saying that the case law says once the door is open, that's a public invitation to come in, and therefore that's so clear on the facts that as a matter of law she has no chance of showing that he forced the entry? I'm not saying it's an invitation to come in. I'm saying that at the doorway, when the arrest process starts, you can follow in. There are doorway cases that if you throw the door open and you stand outside or do whatever, you've essentially opened the door to your house. Well, it goes beyond that. And I think the Venetian case is probably the closest one. It's a Ninth Circuit 95 case. You look at the facts of that one. This is part of the case. This is reading at page 1425. The government's response to Veneta's claim is that a warrantless arrest at the doorway of a suspect's dwelling is constitutionally proper provided that law enforcement has not misidentified itself, has not used coercion, and the suspect acquiesces to the encounter. So it's basically pretty much the same situation, the opinion that goes on and discusses a number of cases. It goes on. Page 1426 of the opinion. As we read the controlling authority, the question presented in this case is not decided only on the basis of whether Venetian was standing inside or outside the threshold of those homes, but whether he voluntarily exposed himself to warrantless arrest by freely opening the door of his motel room to the police. If he so exposed himself, the presumption created by Peyton is overcome, and the court found the arrest proper. On the facts. Correct. I don't think the facts here are much different. I think it's also important to take into account this is not a merits appeal. It's a qualified or immunity appeal. The question is, could a reasonable officer familiar with the cases, including Venetian, have concluded that arrest under these circumstances at that location was proper? That's the problem with having these circumstances. That's your view of how the circumstances unfolded, and the record indicates that there's a different view. You may be right that ultimately your client can prove that it fits within the motel open-door case, but my understanding of the record is that there's a different set of views about what really went on, what the circumstances. I mean, are you afraid to go to trial on this? We tried the case twice already. I've heard it tried again. Yeah. All right. So you had hung jury twice. Correct. So maybe a third time. So, yes, he's afraid. Well, it's expensive going back to trial. The statistics indicate in both civil and criminal trials that the more a case is retried, the better the chances are for the defendant. But putting that aside for the moment, Judge Fischer has put his pin right on the point, and that is we can't resolve facts. The Supreme Court's told us that in this context. Our jurisdiction is limited to questions of law, and if there is a dispute of facts as to whether this is or is not, quote, a doorway case, I don't see how we can resolve that. Well, I think that the. . . Your client's position is that she opened the door. Actually, it's that the roommate opened the door. The roommate opened the door. She then came back to the door in response to the request. So there's no question she's going to the door. And the dispute is whether she. . . her position is I was closing the door, and he reached in and grabbed me. I think you have to step back in time a little bit. Step one, the roommate opens the door, talks to the police, closes the door, goes back inside to get Ms. Goodwin. If she had said I'm not coming to the door at this point, I agree, you couldn't go inside and arrest her. But then she goes to the doorway at that point voluntarily with no coercion other than her roommate saying the officer wants to talk to you. At that point, she either opens the door or she walks to a door which is open at that point. I don't think it makes a difference. She's going to the doorway at that point. If you look at one of the exhibits, which is Exhibit 82, it's a diagram of the house. Are you saying that if there's a police officer at the door and you open the door, that the police officer could come in and arrest you? If he says I'm arresting you and you walk back into your house to prevent the arrest, that's exactly what Vediantin was. It's also exactly what Santana was. It didn't have a warrant. In neither of those cases was there a warrant. Okay. On the arrest side of things. Okay. On that one. Your argument is that under Atwater and other things that it's clearly an appropriate arrest at that point. Correct. On a number of reasons. Atwater and Devon Peck collectively hold that if there's probable cause for anything, whether or not it's fine only, that's sufficient. The plaintiff expressly admitted to Officer Hoke that she had violated city ordinances. That's 2-212. Officer Hoke's intention was to cite for the ---- Well, you know, the answer to that is that you just go and you issue a citation and you mail it to her or serve it on her. Okay. Mail it to whom? It's easy to do. That's one option. It's no different than a traffic ticket. You stop somebody for a traffic violation, and they give their name and an identification and a promise to appear, and they go. If they don't identify themselves, though, then you can't issue a citation. And it's also undisputed, the plaintiff herself admitted it, that she refused to give identification. There's a dispute back and forth about whether or not Ms. Hoke knew her name, but it's undisputed her own admission. They knew who this lady was. They knew who she physically was. They didn't know what particular name before she was used over the years that she was using at the time. A neighbor complained about her. Is that right? Yes. You had the name. You had everything. Well, had we had a physical body, which ---- Who do you cite when someone has four different names over different time periods? I know this case reminded me of when I was a municipal court judge one time many, many years ago before you were born. We had an arraignment at Van Nuys, and here was this nice man with a nice suit on, almost like yours, gray suit, nice tie, sitting with all the prisoners. And so we called his case, and I said, well, what's this all about? Why are you here? Well, something about his dog got out of the house and didn't have a license, so he got arrested. So he spent a night in the county jail because his dog didn't have a license. You weren't that guy, were you? I'm over time. Oh, you're over time anyway. Okay. I think the important point is you're over time. Okay. All right. May it please the Court, my name is Andy Giardini. I have the pleasure of representing Shirley Goodwin, who's present today in court. This is a factually rich case, and there is an active dispute about the case. There is as to one part of it. Is there as to the false arrest claim? There is, Your Honor. What's the factual dispute? Okay. Why didn't they have probable cause to arrest her on the misdemeanor claim under Atwater? She was known by Susan Hoke, the animal control officer. Susan Hoke was hired by her brother-in-law in the animal control office. Her brother-in-law, Paul Turner, was the head of that office. They knew her name. So did they in Atwater. Justice Souter said this is a small town, you know, everybody knows everybody. That didn't make any difference to the Supreme Court. The case they presented both times at trial was the failure to sign a completed citation. There was never a completed citation. We've put in the record the citation that existed in the form it existed before her arrest, that is before she was taken down in her living room and put in a police car. We're not talking about whether the manner of the arrest is one thing. Whether they had probable cause to arrest her is the other claim. If she had stayed there with the animal control officer but refused to give more information or refused to sign and simply stood there and Officer Shuck had shown up, would he have had probable cause to arrest her? If she had refused, yes. If she had refused to sign the citation. But there was no citation. There was a voided citation. And the only citation that ever existed in a completed form that was presented to her for signature, she was already in the police vehicle under arrest. There was no citation that had been presented to her for signature. Why? Because the animal control officer didn't complete it and didn't give it to her. And Susan Hoke stated under oath in her testimony that she didn't believe she had any grounds for arrest at the time that Shirley Goodwin retreated and went into her residence, which she had a right to do. Why, Ms. Hoke? Does an animal control officer have the authority to effect an arrest? Yes. She does. That's my understanding. But she said she didn't have grounds to arrest. The facts on the entry are far more severe than have been presented and argued. The door was closed. And Ms. Goodwin was on the phone to Paul Turner, her brother-in-law, asking what her rights were. She herself is a retired sergeant sheriff in San Bernardino County. And she asked, what can happen? And he told her, they're going to send you a long-form citation. And you should accept it and you should pay it. And she was perfectly happy to do that. And she's on the phone talking to him. He's listening to the event as it happens when the officer opens the door himself, which had been closed. In fact, her roommate, Mr. Tallur, believed he had locked the door, but mistakenly, and he blames himself to this day, he didn't. So the officer had opened the door and had entered in the sense that he put his foot in, put his shoulder against the door, was in her entryway before she opened it, gave permission or anything else. It is no different than a police officer without a warrant on a pet violation, minor, infraction-only event, entering a residence without, at that time, any probable cause, as admitted by Susan Hoke. He developed probable cause after he entered. He claimed that she hit him with the screen door, trying to exclude him from the residence. Did he have probable cause to arrest her for the underlying pet violation itself, regardless of whether or not she signed the citation? Were there not facts that were recounted to him that she had in excess of the requisite number of pets? He had no knowledge of any more than requisite number of pets. The pets weren't in open, visible sight. He had no knowledge about licensure of any pet. It doesn't have to. What does he have? He has to have probable cause to arrest for a violation of the pet ordinance. He can use the knowledge of the pet control officer can be imputed to him. The pet control officer, similarly, herself did not have that knowledge. She was trying to develop that knowledge was her testimony. She was writing a citation based on what she knew at the time. She was writing a citation trying to find out whether there was sufficient information. My belief is that there weren't sufficient facts even for him or her, Ms. Hope, to know that there had been pet violations. There were pet violations. My client is a pet activist who saves dogs and was known by the animal control. They'd been out the month before on the exact same thing and had not arrested her under the exact same circumstances. This was a draconian excess of the use of authority in her home. It sounds like it's been hard to convince me of that. What's that? I'm sorry. Well, I'm just saying you're blending the two. I'm only talking about whether there's a false arrest. Okay? You're talking about the manner of the arrest. What I want to make sure is that in terms of your claim for false arrest, that is, they had no probable cause to arrest her for anything, zilch. In light of Atwater, I think that claim is questionable. I'm trying to understand what your basis for saying it couldn't happen. My belief, based on having tried the case twice, is that there was no probable cause to arrest. I think the officer made up the screen door. So you are as a matter of fact there wasn't or as a matter of law there wasn't? As a matter of fact. He didn't have any information that any crime had occurred. And it's patently unbelievable that she could have tapped his left shoulder with the screen door. And that's what he arrested her for. I'm talking about the pets, the pets, the pets. He didn't have any information about that. The record is quite clear that on the ground, the animal control officer had formed the impression, the belief, based on what she had heard in conversation, that Ms. Goodwin was in violation of the pet ordinance, a misdemeanor. All of that. I understand it. The animal control officer was investigating those circumstances. The office did know information about it. And, in fact, she did have too many pets and two that weren't licensed. However, Susan Hope, the animal control officer, said she had no grounds for arrest that day. And nothing was happening that day. And she observed nothing that was a crime or a penalty offense of any kind. The citation was, what was the nature of the citation? Just come in and talk to us? The nature of the citation was that she was trying to fill it out. Fill it out. But what is the citation? That's a preprinted form, right? It's in the record. I'd just like you to tell me if it was a summons or it was just an invitation to come in and tell us. No, no. It's a citation. It alleges a violation. If it had been completed, she was trying to write down the names of the dogs to show that there were more than two. Right. So her belief was that she had probable cause to write a citation for violation of an ordinance. The evidence is in conflict on that. But she didn't believe that she had enough information to even issue the citation at that point. She didn't issue it until after the arrest on a completely separate form. Why did she call a backup officer? She said that she wasn't getting cooperation from Ms. Goodwin. That's what she said. Why she did, I don't know. The month before, the exact same thing had happened. That animal control officer called the officer who came in and left, you know, correctly determining that there was nothing that he, that officer, should do. Why a month later they decided to invade her home and arrest her, I think, is the whole meat of the case. And it's a very factually rich circumstance how the officer got into that house. Well, it's a very exciting case. And so anything else? That's all I have. Thank you. Thank you. You're out of time. No, no, you're all out of time. You've given me plenty of excitement for one day. All right. Okay. Where's the sheriff? The retired sheriff. She just left. Oh, there she is. Yeah. Okay. All right. All right. Now we're on the Piggy versus Mendoza.  Piggy. Okay, there's a lottery being won as you say that because everybody was trying to figure out how to pronounce it.
judges: Pregerson, Hawkins, Fisher